## Southeastern Greyhound Lines v. Pendleton et al.

## Hazard-Jenkins Line, Inc. v. Pendleton et al.

February 15, 1949.

James Park, Stoll, Keenon & Park and R. W. Keenon for appellants.

William Stanfill, and Craft & Stanfill, J. B. Carpenter, Jr., and J. R. Carpenter, for appellees.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

These cases were heard together in the lower court and will be treated together on this appeal since they are closely related.

### Statement of the Cases.

For a number of years the Southeastern Greyhound Lines has held a certificate to operate a bus line from Hazard to Jenkins over highway No. 15 by way of Jeff, Vicco, Cody and Sawdust Junction. It also has a certificate from Hazard to Jenkins over highway No. 7 and No. 15 by way of Jeff, Cornettsville, Blackey and Sawdust Junction, the two routes dividing at the junction of No. 7 and No. 15 at Jeff and coming together again at the junction of these two highways at Sawdust Junction. The Southeastern has not operated buses on either of these routes but since the acquisition of these certificates they have been leased to its co-appellant, Hazard-Jenkins Lines, which has operated bus lines under these certificates for many years. The principal operation of this company has been over the northern route over highway No. 15 via Jeff, Vicco and Cody which is the usual through route to Whitesburg and Jenkins. It has also operated to a lesser extent from Hazard to Cornettsville on route No. 15 and No. 7 via Jeff and Viper, this being on the southern route.

Several years ago a new mining operation was begun on Leatherwood Creek, known, and hereafter re-

ferred to, as the Blue Diamond Mine, located some ten miles southwest of Cornettsville which is on highway No. 7 on the southern route heretofore referred to. All indications were that the Blue Diamond M ne would be a large operation, ultimately employing over a thousand miners. Quite naturally this attracted the attention of many bus line operators and prospective operators in that territory to supply the transportation that would be needed by miners working in the new f eld. As a result nine companies, individuals or partnerships filed applications with the Division of Motor Transportation for certificates of conven'ence and necessity to operate buses from various starting points, principally Hazard, to other points in the territory which would traverse and include the new Blue Diamond Mine. Included among these applications, and the only ones with which we are concerned in this appeal, are the following: (1) Southeastern from Hazard to Harlan over highway No. 15 and No. 7 by way of Cornettsville and the Blue Diamond Coal Mine (2) Hazard-Jenkins Lines from Cornettsville to Clover Fork which would pass through the Blue Diamond Mine field. This company already had a certificate from Cornettsville to Hazard as lessee under Southeastern, as heretofore shown. This company also f'led another application for a certificate from Harlan to Clover Fork. This latter l'ne would have connected up at Clover Fork with the other application of the same company from Hazard to Clover Fork; (3) Pendleton & Pryor Bus Co. from Hazard to the Blue Diamond Mine over highways No. 15 and No. 7 via Jeff and Cornettsville. A hearing on all these applications and protests against same was held on October 8, 1945, at the Division of Motor Transportation in Frankort, and on August 7, 1946, the Director of that d'vision rendered a written decision under which he dismissed all the applications filed except that of Pendleton & Pryor Bus Co. to which company, a partnership composed of William Pendleton and Joe Pryor, the much sought after certificate was issued under certain condit'ons as to its operations. The reasons given by the Director for the award of the certificate and the conditions and limitations under which it was issued can best be shown by the following quotation from the decision:

"The testimony, when transcribed, consisted of

some three volumes aggregating over 350 typewritten pages, in addition to a number of maps and other exhibits filed. The filing of these applications and the introduction of so much evidence was occasioned by the opening of a new and large coal mining enterprise in Perry county at a place known as Blue Diamond on Leatherwood Creek, just a few miles off of Highway 7 between the towns of Hazard in Perry county and Whitesburg in Letcher county. At the time of the hearing it appeared that the coal mine already was employing some 300 miners and that it was proposed to extend the operation to such an extent as to employ 1,000 miners, and it was contemplated that when the mine reached full production that it would be the largest coal mining operation in the Perry county field, producing and shipping 140 car loads of coal daily. It also appears that at the time of the hearing there were living-quarters at the mine for but a fraction of the workmen who would be employed. It also appears in the testimony that many of the miners already employed, and others to be employed, live, and probably will continue to live, in or near the town of Hazard or between Hazard and the Blue Diamond mines. It is therefore clear that a real necessity exists for bus service to transport the miners already employed and those to be employed from their homes to the mines and return. Since many of these miners on their trips to the mines will be dressed in their working clothes, ready for work, and will on their return from the mines bear the accumulated soot, dirt and grime necessarily collected upon their persons and clothes as a result of their labors, it is clear that there should be buses furnished for the service to these miners primarily for their own transportation, as it would not be practical or fair, either to the miners or to the rest of the traveling public, to force them to ride upon buses primarily engaged in the transportation of the general public.

"The Director, in view of the facts set out above, and after considering all of the evidence and argument of counsel, is of the opinion that a certificate of convenience and necessity should be granted to the applicant, Pendleton and Prvor, for the operation of bus service between Hazard, Kentucky and the Blue Diamond Company operations on Leatherwood Creek, traversing

Highway 15 from Hazard, Kentucky to Jeff, Kentucky, thence traversing Highway 7 from Jeff to a point at or near Cornettsville, thence to the Blue Diamond Coal Company workings on Leatherwood; provided, however, that said Pendleton and Pryor shall operate with closed doors between Hazard, Kentucky and the point referred to at or near Cornettsville, except in going from Hazard to Blue Diamond Coal Company they may pick up passengers at Hazard or between Hazard and Cornettsville destined for any point of the route between Cornettsville and Blue Diamond or for Blue Diamond. They may operate with open doors between Blue Diamond and Cornettsville and with closed doors from Cornettsville to Hazard, provided, however, they may discharge passengers picked up at Blue Diamond or between Blue Diamond and Cornettsville destined for any part of the route between Cornettsville and Hazard.''

### The Southeastern's Case.

We will first take up and dispose of the application of the Southeastern Greyhound Lines and its appeal to this court. Although the Southeastern was one of the applicants for a certificate, as set out above, its application was not considered by the Director of Motor Transportation at the general hearing on all the applications which was conducted on October 8, 1945. The reason given by the Director for the refusal was that the application came too late. Southeastern Greyhound filed its application on September 15, 1945, and the application was received at the Division of Motor Transportation two days later on the 17th. The hearing had already been called and was set for September 26, 1945, although it was continued for convenience of all parties to October 8, 1945, at which time the general hearing was held. At the beginning of this hearing on October 8, counsel for the Southeastern Lines requested a continuance for thirty days so that its application could be considered along with the others but this was refused by the Director. Appeal from this decision of the Director was filed in the Franklin Circuit Court on August 17, 1946. The judge of that court upon consideration of the record and the findings of the Director and after oral argument, on September 27, 1947, entered a judgment upholding the ruling of the Director and dismissed the appeal. It is from that judgment that this appeal is prosecuted by

the Southeastern Greyhound Lines. It contends that the Director erred in refusing to permit the appellant to have a hearing on its application, in refusing to continue all applications until a hearing could be had on its application along with the others and that the Director erred in refusing to allow a lease between the Southeastern and Hazard-Jenkins Lines to be filed and considered. Other reasons given went into the merits of its case and its protest against the issuance of a certificate to appellees, Pendleton & Pryor. Since the matter of the contract and the merits of the case, which are in reality the merits of the Hazard-Jenkins Line case, and the protest which both made against appellee, Pendleton & Pryor, will be taken up when that appeal is considered further on in this opinion, we now refer only to the refusal of the Director to consider this appellant's application at the general hearing or to postpone that hearing at appellant's request.

Procedural matters of this type are and must be left largely to the discretion of the Director of Motor Transportation and that discretion should not be interfered with unless abused. Appellant, Southeastern, is much experienced in bus transportation and its regulation and its able counsel no doubt keeps fully abreast with the regulations under which its lines operate. Among these regulations is one which requires thirty days' notice shall be given to all interested parties before a hearing is held on an application for a certificate of convenience and necessity. The hearing on the numerous applications involved in this case was originally set for August 11, then continued to September 26, and finally heard on October 8. Appellant only filed its application on September 15, and it was received at the Division on September 17, long after the original date set and less than ten days before the continuance date and less than thirty days before the date on which the hearing was finally had. The only reason given by appellant for the delay in filing was that the president of appellant company was away and did not have an opportunity to file the application until his return. We cannot believe that a matter of this character would require the personal attention of the company president. It would appear to be a matter that would be attended to by the legal department. With the many parties in-

volved in this hearing, it was probably no easy matter to get them all together at a given time and if that was finally accomplished on October 8, the Director was justified in refusing a further continuance for an applicant which had not filed its application on time. After a careful consideration of this phase of the case, we are of the opinion that the Director did not abuse his discretion in refusing to further postpone .the hearing and thus refusing to consider appellant's application. The judgment of the lower court on this part of the appeal is therefore affirmed.

### The Hazard-Jenkins Line Appeal.

The basis of the Director's decision has already been shown in the excerpt from that opinion heretofore set out. From that order denying Hazard-Jenkins Line the certificate it had applied for and granting to Pendleton & Pryor the certificate it sought, the Hazard-Jenkins Line appealed to the Franklin Circuit Court. It filed a petition setting up the facts heretofore related and prayed that the order of the Director be set aside and instead that a judgment be entered directing the Director to grant a certificate to this appellant. An answer and reply made up the issues and after consideration of the pleadings and the record made up before the Division of Motor Transportation together with the opinion of the Director, and after argument of counsel the lower court, on September 24, 1947, entered an order and judgment dismissing the appeal and sustaining the order of the Director in awarding the certificate to the Pendleton & Pryor Bus Co., the court giving it as its opinion that there was ample evidence in the record to warrant the findings of the Director. It is from that judgment that this appeal is prosecuted.

The only ground relied on for reversal is that the decision and findings of the Director are not supported by any substantial evidence. After a careful reading of all the evidence as it relates to the parties involved in this appeal, we cannot agree with appellant's contention. From that evidence as a whole we are inclined to agree with the arguments made in appellant's brief that from the standpoint of experience in bus operation and equipment available at the time of the hearing, appellant could have perhaps immediately rendered better service

than appellee. However, that is an argument more properly addressed to the Director. It is not for this court to weigh and evaluate the respective claims of applicants for certificates and to decide which one, in our opinion, would better serve the situation involved. That is the function of the Director and if there is before him substantial evidence of probative value and he has not acted in an arbitrary and capricious manner, his decision should not be overturned by this court, especially when that decision has been confirmed by the Circuit Court. This is a fundamental principle of administrative law and we think a sound one, for an administrative agency of the type here involved tending from its experience in such matters to become expert in its field, is far better qualified, after a hearing of the many conflicting interests involved, than is this court to decide such questions. We think the Director had before him substantial evidence of probative value to reach the conclusion he did reach. That evidence was in substance that both Pendleton and Pryor were experienced business men, both coal operators, and were financially able to carry through with the proposed project. The evidence showed they were worth about $75,000 and, while they did not own any buses at the time, they were able to and would immediately acquire the necessary equipment. Neither has had experience in bus operation but expected to employ qualified personnel who have had such experience. They expected to arrange their schedule to accommodate the various shifts at the mines. From all the evidence of the appellees, we gather that it is their aim to organize and carry on a specialized bus service for miners between Hazard and the Blue Diamond Mine field and while it is not in the evidence, we are impressed with the statement given by the Director as one of his reasons for granting the certificate to the appelles; that was, that both the miners and the traveling public would be happier if miners in their necessarily dirty clothes were served by the specialized transportation proposed by appellees rather than in public buses. We think the Director had the right to take this into consideration as one of the facts of life even though it was not part of the direct proof.

The lease between the two co-appellants, heretofore referred to and which was not permitted to be filed by

the Southeastern, was filed in the Hazard-Jenkins case and was considered by the Director as shown by the following excerpt from his opinion:

"The Director in reaching the above decision took into consideration the terms of the lease now on file between Southeastern Greyhound Lines and the Hazard-Jenkins Line for operations between Hazard and Whitesburg over Highway 15 and 7, and gave particular attention to the cancellation clause in said lease and to the contract between Southeastern Greyhound Lines and the Hazard-Jenkins Line whereby Hazard-Jenkins Line agreed with Southeastern Greyhound Lines to turn over any certificate which may be granted Hazard-Jenkins Line at the hearing in the event of the cancellation of said lease."

After a careful consideration of the entire record, including the lease contract above referred to, we are of the opinion that the decision of the Director in this case was based on substantial evidence of probative value and that the judgment of the lower court in upholding that decision should be affirmed.

Judgment affirmed.