## GREYHOUND CORP., Inc., et al, v. STEELE.

Court of Appeals of Kentucky.
Dec. 15, 1950.

As Modified on Denial of Rehearing
March 16, 1951.

R. W. Keenon, Lexington, J. L. Donaldson, Carrollton, Louis Cox, Frankfort, for appellants.

Smith & Leary, Frankfort, for appellees.

CLAY, Commissioner.

This is an appeal from a judgment of the Franklin Circuit Court affirming an order of the Division of Motor Transportation which granted to appellee, American Bus Lines, Inc., a certificate authorizing the operation of a bus service between Louisville and Covington over U. S. Highways 25 and 42.

U. S. Highway 42 is the chief trunk line highway between Louisville and Covington, a distance of approximately 112 miles. There are several sizable communities along the route, and a great number of persons are served by this highway. There is no significant railway service covering the area. For a number of years Greyhound has furnished the only bus service.

It is Greyhound's fundamental argument that it had a property right in its monopoly of bus line transportation over this route, and it is entitled to protection from the competition of another carrier. While it certainly has rights, which will be protected by law, its certificates authorizing the operation constitute a privilege bestowed

by the state, subject to its regulatory powers. Greyhound can have no legitimate complaint if a certificate was issued to American under authority granted by the Legislature to the Division of Motor Transportation. Also, the decision of the Director should not be disturbed by the courts if there was substantial evidence showing a public convenience and necessity for the new service, and the action taken was not arbitrary or capricious. See Southeastern Greyhound Lines v. Pendleton, 309 Ky. 372, 217 S.W.2d 962.

A number of witnesses testified in substance to the following: It was often necessary to stand in line at Greyhound's bus stations in order to get a seat; several persons who use the bus service frequently had to stand in the aisles half of the time; many persons were refused rides; and in general the service was inadequate because of overcrowded conditions which had existed for some time. As noted, the Louisville-Covington route covers approximately 112 miles, and it is obvious that standing on busses for substantial distances constitutes a real hardship.

■ Greyhound's own records show a serious overcrowded condition. During four typical two-week periods in 1947 and 1948, 1834 persons were required to stand on busses between Louisville and Covington; and over this period, 476 busses were operated fully loaded without available seats for additional passengers. In addition, these records demonstrate that Greyhound has consistently violated KRS 281.320, which forbids common carriers transporting persons for hire to carry a greater number of passengers than 25 percent over its seating capacity. There was ample evidence to support the finding of the Director that Greyhound's service over a long period of time had been inadequate. While public inconvenience is not alone the controlling consideration, the extent of that inconvenience may be so great as to create a public necessity for a new service. See Short Ways Lines, Inc., v. Black, 298 Ky. 67, 182 S.W.2d 17.

Greyhound contends, however, that even assuming its service has been inadequate, the Director was not authorized to grant a new certificate until after a finding to this effect and after Greyhound had been given an opportunity to improve its service. This argument is based upon KRS 281.180(2) and our decision in the case of Utter v. Black, 305 Ky. 136, 202 S.W.2d 425. The statute provides in part as follows: (2) "If the division, after a hearing held upon reasonable notice upon its own motion or upon complaint, finds any existing rate to be excessive, unreasonable or unjustly discriminatory, or finds the services·rendered or facilities employed by any common carrier to be unsafe, inadequate, inconvenient or in violation of law or of the rules and regulations of the division, it may determine the just and reasonable rates to be charged thereafter, or the reasonable, safe, adequate and convenient service to be thereafter furnished, and shall fix the same by order. * * *."

It is insisted that under this provision of the law, before the application of a competing carrier may even be considered, a formal hearing upon notice must be held, and if the service is found inadequate, the Division should order the operating carrier on the route to improve its service. Until such an order has been entered, and until the carrier has failed to comply with it within a reasonable time, it is argued the Division may not grant another certificate to a competing carrier. Greyhound contends that Utter v. Black, 305 Ky. 136, 202 S.W.2d 425, conclusively settles that proposition. In that case we used the following language, 305 Ky. at page 140, 202 S.W.2d at page 428: " * * * the rule is that before the Director may grant an additional permit he must call upon the bus operator to render the required additional service, and it is only upon the operator's failure or refusal to meet the Director's demand that an additional certificate will be granted, or existing restriction removed from the certificate of a competitor. In short, the existing operator must be notified by the Director that he is rendering inadequate service and be given reasonable opportunity to improve it before another carrier is allowed on his route."

The case of Utter v. Black has been re-argued before us on several occasions, and it has been urged that the quoted language above is dicta, and that it is based upon statutes which had been repealed prior to the decision. We are asked by American to overrule the case, but we do not think the solution of our present problem depends upon the ruling there announced. If that decision was controlling and applicable, we find that the requirements for notice and opportunity to improve service have been substantially complied with under the facts before us.

They show that Greyhound was notified that its service was inadequate. In July 1946, Greyhound received a letter from the Division advising that many complaints had been received regarding the overcrowding of busses, and calling on the carrier to cease violation of KRS 281.320, which prohibits transporting a greater number of passengers than 25 percent over seating capacity. Over a year later, in September 1947, Greyhound was again notified about complaints of overcrowding. Notice was given to remedy the situation before October 1, 1947, or to make some arrangement with the Division for a reasonable solution to this problem. In addition to these letters, Greyhound's own records showed the conditions about which complaints were being made.

The evidence does not indicate that Greyhound undertook to improve its service, but on the other hand, the records show that from October 1947 through April 1948 its bus mileage consistently declined. It is also apparent that Greyhound is principally interested in its inter-state operation, and that it considers the intra-state transportation insignificant.

■ With all these considerations in mind, it is plainly evident that Greyhound had notice that its service was inadequate and it consistently failed, for longer than a reasonable time, to improve that service. Such being the case, the Director had authority to grant a certificate to American if public convenience and necessity so required.

It is Greyhound's final argument that public necessity was not shown, and the case of Ray Whittaker et al. DBA Blue Motor Coach Lines v. Southeastern Greyhound Lines, 314 Ky. 131, 234 S.W.2d 174, recently decided, requires setting aside the Division's order granting a certificate to American. Careful study shows the two cases are not analogous. In the Whittaker case, three different carriers were operating over all or a portion of a route from Louisville to Middletown, a distance of approximately seven miles. There was evidence in the case of overcrowding and public inconvenience. There was also evidence that the existing carriers on the route had the facilities and were ready, willing and able to furnish such additional service as was necessary. We held under those circumstances the entire matter should be remanded to the Division for a reconsideration of the public need for a new carrier on the route.

The distinguishing features of that case and this are clear. In the Whittaker case a short suburban route was involved; here we have a route of over 100 miles where overcrowded conditions create a much more serious hardship on the traveling public. In the Whittaker case there were three carriers furnishing some service on the route; here there is only one. In the Whittaker case it appeared there was a bona fide willingness on the part of the carriers to increase and improve the service; here the record indicates otherwise.

■ On the entire record before us we think the evidence amply supported the finding that both public convenience and necessity justified adding a new service on the route. The opinion of the Assistant Director, Mr. A. R. Steele, shows a most thorough consideration of all the factors involved, and on the basis of an excellent analysis, the conclusions reached were fair and reasonable and in conformity with law. It is our opinion the order granting the certificate to American must be upheld, and there was no error in the judgment of the Franklin Circuit Court.

In view of the conclusion we have reached above, we do not consider it necessary to pass upon the questions raised by American on its cross-appeal.

The judgment is affirmed.